**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Joseph Gisler, | No. CV-22-08134-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

On December 23, 2016, Claimant George Joseph Gisler applied for Disability Insurance Benefits and Supplemental Security Income pursuant to Title II and XVI of the Social Security Act ("SSA"). (AR. 370–71.) Gisler alleged an onset date of October 29, 2015. (AR. 17.) After Gisler's application was denied initially and on reconsideration, Gisler requested an administrative hearing before an Administrative Law Judge ("ALJ") and appeared at one on June 25, 2019. (AR. 74–94, 96–123, 126–55.) In a decision dated August 12, 2019, an ALJ found Gisler not disabled. (AR. 161–74.) On August 10, 2020, the Appeals Council vacated the 2019 decision and remanded the case to an ALJ. (AR. 183–84.) Gisler appeared at a telephonic hearing before an ALJ on December 18, 2020. (AR. 36–73.) On January 27, 2021, the ALJ issued an unfavorable decision, finding Gisler not disabled. (AR. 17–28.) The Appeals Council denied review of that decision, making the ALJ's 2021 decision the final decision of the Commissioner of the Social Security Administration. (AR. 1–3.) Gisler seeks review of the Commissioner's decision pursuant

to 42 U.S.C. § 405(g). For the reasons herein, the Court affirms.

**I.     Five-Step Sequential Evaluation**

To determine whether a claimant is disabled for the purposes of the SSA, the ALJ employs a five-step sequential evaluation. *See* 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but burden then shifts to the Commissioner at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines whether the claimant is engaged in substantial, gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If he is, the claimant is not disabled, and the inquiry ends. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, where the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment—or combination of impairments— that meets the duration requirement. *Id*. § 416.920(a)(4)(ii). If the claimant does not have such an impairment, he is not disabled and the inquiry ends. *Id.* If, however, the claimant has such an impairment, the ALJ proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets, or is medically equal to, an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(ii). If so, the claimant is disabled and entitled to benefits under the SSA. *Id.* If not, then the ALJ moves to the fourth step, at which the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is capable of such work, the claimant is not disabled. If he is not capable of performing past work, then the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(iv). If claimant is not capable of such work, the claimant is disabled and entitled to benefits. *Id.*

**II.    Judicial Review**

A district court only reviews the issues raised by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court will uphold

an ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Burnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). If the "evidence is susceptible to more than one rational interpretation," the Court will affirm the ALJ's decision. *Id.* That said, the Court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

**III. Analysis**

Gisler raises five issues for the Court's consideration. He contends the ALJ erred by: (1) finding that Gisler's headaches are non-severe and failing to consider all of Gisler's impairments, both severe and non-severe, in formulating the RFC; (2) not giving controlling weight to the opinion of Gisler's treating physician; (3) not crediting Gisler's testimony as true; (4) failing to apply the prior ALJ's RFC limitation of only "brief and superficial contact with others;" and (5) failing to show that jobs exist in significant numbers in the national economy that Gisler could perform. (Doc. 9.) The Court addresses each argument in turn.

**A. The ALJ did not err in finding that Gisler's headaches are a non-severe impairment.**

At step two, an ALJ must determine whether the claimant has a medically determinable impairment—or combination of impairments—that is "severe." 20 C.F.R. § 404.1520(c). An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities" and "is expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1520(c), 404.1509. Basic work activities include: physical functions, like walking, standing, sitting, seeing, lifting, and pushing; social functions, like communicating and responding to supervisors and coworkers; and cognitive functions, like using judgment, understanding and carrying out instructions, and dealing with changes in a routine work setting. SSR 85-28, 1985 WL 56856, at *3. An impairment

is *not* severe if "the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28, 1985 WL 56856, at *3). An ALJ's error at step two is harmless if, at step four, the ALJ properly considers the combined effect of all impairments—both severe and non-severe—in determining a claimant's RFC. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

In this case, the ALJ found that Gisler's headaches did not more than minimally affect his ability to perform basic work activity, noting that throughout the record Gisler repeatedly denied having headaches. (AR. 19 citing *e.g.*, AR. 570, 608, 918.) Gisler also only reported having headaches "on occasion" between October 2015 and August 2016, and then again from November 2017 through November 2020. (AR. 19 citing *e.g.*, 793, 807, 822.) The ALJ concluded that "[t]he record does not support the frequency of headache that one would expect from an individual claiming to be unable to work from this condition." (AR. 21.)

Gisler contends that the standard for severity is *de minimis* and that the record provides "ample evidence" that Gisler's headaches are severe, directing the Court's attention to six specific places in the record. (Doc. 9 at 10–11.) The first three are medical records that were made prior to the relevant adjudicatory period: two of which concern a hospital visit on September 8, 2014 (AR. 634, 656), and the third relating to a neurology consult in November 2014. The latter three records are from the relevant period and note a diagnosis of "cervicogenic headaches" and that Gisler finds such headaches "bothersome." (AR. 1311, 1326.)

The Court agrees with Gisler regarding the appropriate standard for determining severity of an impairment at step two. *Smolen*, 80 F.3d at 1290. However, the Court is not persuaded that the ALJ erred. For one, the record fails to demonstrate that Gisler suffered from such chronic or debilitating headaches that he was unable to do basic work activities. As the ALJ pointed out, Gisler frequently denied having headaches throughout the relevant period, and when headaches were documented, there were merely "on occasion."

Additionally, even if Gisler did suffer from recurring headaches, that alone is not necessarily sufficient to establish severity. "A diagnosis alone is an insufficient basis for a finding that an impairment is severe. The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Gold v. Comm'r of Soc. Sec. Admin.*, CV-19-1494-PHX-JFM, 2020 WL 13481639, at *4 (D. Ariz. 2020) (quoting *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002)); *see also Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981) ("Standing alone, the mere existence of a functional limitation is insufficient to justify an award of benefits. In addition, there must be proof of the impairment's disabling severity."). Here, Gisler fails to point to any part of the record demonstrating that such headaches impeded his ability to work.

To add, those same records Gisler draws the Court's attention to demonstrate that "[m]edications make his pain tolerable." (AR. 1326.) That in tandem with the infrequency of such headaches is substantial evidence supporting the ALJ's finding that Gisler's headaches are not severe. *Cf. Bakewell v. Comm'r of Soc. Sec. Admin.*, 360 F. App'x 945, 946 (9th Cir. Jan. 4, 2010) (finding ALJ's non-severity finding to be error where "[claimant's] migraines incapacitated her for several days and . . . persistent symptoms were not controlled effectively with medication").

What's more, even if the ALJ incorrectly found that Gisler's headaches are non-severe, Gisler fails to demonstrate how any such error is harmful. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits."); *Tommasettie v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (internal quotation marks omitted). Gisler argues that "[l]ooking at the ALJ's brief RFC discussion, neither headaches nor any of the other non-severe impairments were ever brought up in the RFC analysis." (Doc. 9 at 11.)

However, a review of the *entirety* of the ALJ's decision reveals that the ALJ sufficiently considered all impairments, both severe and non-severe, in making the RFC determination. An ALJ is required to discuss and evaluate the evidence that supports her conclusion but is not required to do so under specific headings. *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013); *see also Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). To the extent the ALJ's discussion of Gisler's headaches falls outside of the section dedicated to the RFC, that does not constitute error and is not a sufficient basis to reverse the ALJ's decision. In short, the Court finds that it was rational and supported by substantial evidence for the ALJ to have concluded that Gisler's headaches, even in tandem with other impairments, were not so debilitating as to translate into a functional limitation in the RFC. *See Rania v. Kijakazi*, No. 2:20-cv-01541, 2021 WL 5771663, at *3 (E.D. Cal. Dec. 6. 2021) ("While [SSA] regulations require the ALJ to consider the effect of all [claimant's] impairments in formulating the RFC, they do not require [the ALJ] to translate every non-severe impairment into a functional limitation in the RFC.").

> **B. The ALJ provided specific and legitimate reasons supported by substantial evidence for discrediting the opinion of Gisler's treating physician.**

Because Gisler filed his claim for disability benefits prior to March 27, 2017, the SSA regulations prescribed under 20 C.F.R. Part 404.1527 apply. Under these regulations, a treating physician's opinion is generally entitled to deference. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the treating physician's opinion than to the opinions of non-treating physicians because the treating physician is "employed to cure and has a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(2). An ALJ must give a treating source's medical opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If a treating physician's opinion is not contradicted by another physician, the treating physician's opinion may only be rejected for "clear and convincing reasons." *Lester*, 81 F.3d at 830. If a treating physician's opinion is contradicted, it may only be rejected for "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*; *see also Orn*, 495 F.3d at 632.

Here, Gisler's opening brief argues that the ALJ "ignored" the medical opinion of Gisler's treating physician, Dr. Benjamin Venger, and, consequently, failed to give such opinion controlling weight as required by SSA regulations. (Doc. 9 at 6–9.) As Gisler later concedes in his reply brief (*see* Doc. 13 at 2),[1] the first part of this argument is incorrect: the ALJ explicitly discussed Dr. Venger's opinion and afforded it "less weight" than that of the state agency doctors. (AR. 26.) The second part of Gisler's argument also fails: the ALJ was not required to give controlling weight to Dr. Venger's opinion given that it is contradicted by the opinion of other physicians.

The state agency physicians opined that Gisler had no manipulative limitations, could lift or carry 20 pounds occasionally and 10 pounds frequency, and could sit/stand or walk for a total of 6 hours in an 8-hour workday. (AR. 104–05, 118–19, 135–36, 150–51.) The ALJ afforded "some weight" to these opinions, explaining that they are "somewhat consistent with the record" but that the evidence warrants additional manipulative limitations to accommodate Gisler's ability to engage in overhead reaching, handling, and fingering. (AR. 26.) In contrast, Dr. Venger's Medical Source Statement ("MSS") provides that Gisler can only use his fingers and hands 30% of the day, can never lift 10 pounds or more, can rarely lift less than 10 pounds, can only sit/stand for 30 minutes at a time, and can sit/stand for a total of 2 hours in an 8-hour workday. (AR. 1387–89.) Moreover, Dr. Venger's MSS limits Gisler to "low stress jobs" and provides that Gisler can never look down, rarely turn his head in all directions, and rarely hold his head in a static position.

---

[1] Gisler acknowledges that he mistakenly overlooked the ALJ's discussion of Dr. Venger's medical opinion because the ALJ refers to Dr. Venger as the "medical provider," rather than by name.

- 7 -

(AR. 1387.) The ALJ afforded this opinion less weight than the state agency physicians' opinions, explaining that Venger's MSS is vague, provides for extreme limitations unsupported by the record, and is inconsistent with objective medical evidence. (*Id.*)

These are all specific and legitimate reasons for discrediting Dr. Venger's opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings."); *Matney v. Sullivan*, 981 F.2d 1016, 1019–1020 (9th Cir. 1992) (holding that inconsistency between clinical findings and doctor's opinion regarding plaintiff's work limitations is a specific and legitimate reason for disregarding physician's conclusions). And these reasons are supported by substantial evidence. For one, Dr. Venger's MSS opinion is largely a check-off report, with little to no explanation for the extreme limitations assessed. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("[T]he ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions."). Further, Dr. Venger's exertional limitations contradict objective medical evidence such as Gisler's x-rays, which only show mild degenerative changes in his spine and mild osteoarthritis in his hands. Thus, the Court finds no error in the ALJ's decision to afford Dr. Venger's opinion less weight.

### C. The ALJ provided clear, convincing, and specific reasons for discrediting Gisler's symptom testimony.

An ALJ employs a two-step process in evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether there is an underlying medically determinable impairment that "could reasonably be expected to produce the . . . symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation omitted). If the claimant meets this first test and absent evidence of malingering, the ALJ then "can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*; *Garrison*, 759 F.3d at 1015. This is the most demanding standard in Social Security cases. *Garrison*, 759 F.3d at 1015. "A finding that a claimant's testimony is not

credible 'must be sufficiently specific to allow a reviewing court to conclude the [ALJ] . . . did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

Here, Gisler alleged constant pain in his back, neck, and arms and tingling in his hands. The ALJ found that although Gisler's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Gisler's allegations of intensity and disabling effects of such impairments were inconsistent with other evidence in the record. (AR. 24.) First, the ALJ noted that objective medical evidence contradicted Gisler's allegations regarding the severity of his impairments. For instance, Medical Resonance Imaging ("MRI") of Gisler's cervical spine revealed only mild degenerative disc disease and osteoarthritis with no evidence of disc protrusion, spinal stenosis, or cord compression. (*Id.* citing AR. 997–98.) An MRI of Gisler's lumbar spine showed an asymmetric transitional vertebra, which might cause altered weight-bearing, but revealed no evidence of spinal stenosis or neutral foraminal compromise. (*Id.* citing AR. 1198–99.) The ALJ reasoned that these mild objective findings were inconsistent with Gisler's alleged disabling spinal impairments and instead demonstrated that Gisler could sit, stand, and walk at a light exertional level. This is a clear and convincing reason to discredit symptom testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that inconsistencies between subjective complaints and objective medical evidence is a clear and convincing reason for discounting claimant's testimony). Gisler contends that the ALJ minimized the severity of Gisler's MRIs. Even if that is so, the ALJ's interpretation of the objective medical imaging is a rational one and where "evidence is susceptible to more than one rational interpretation," the Court must affirm the ALJ's decision. *Orn*, 495 F.3d at 630.

The ALJ next acknowledged that clinical evidence did support *some* limitations in Gisler's RFC, just not as extreme as Gisler claimed. (AR. 24.) For instance, physical examinations revealed tenderness to palpation and muscle spasms in Gisler's spine, but

also that Gisler's sensation remained intact and that he maintained negative straight leg raise tests. (*Id.* citing *e.g.*, 794, 814, 823.) The ALJ reasoned that such evidence warranted a limitation to occasional postural activities. As for the tingling in Gisler's hands, the ALJ explained that x-rays and clinical findings from October 2015 to August 2016, which showed mild osteoarthritis in Gisler's left hand and positive Tinel's sign, warranted a limitation of frequent reaching in all directions except above and frequent handling and fingering. (*Id.* citing *e.g.*, 794, 814, 898.) That said, Gisler's normal strength upon examination, conservative treatment plan (a prescribed wrist brace), and reported daily activities supported a finding that Gisler could lift and carry at a light exertional level. (*Id.* citing *e.g.*, AR. 469–70, 789.) Inconsistencies between a claimant's testimony and other medical evidence, treatment, and daily activities are clear and convincing reasons to discredit symptom testimony. *See* 20 C.F.R. § 416.929(c)(2); *Barnhart*, 278 F.3d at 959; *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Hanes v. Colvin*, 651 F. Appx. 703, 705 (9th Cir. June 5, 2016) (holding that evidence of "conservative treatment plan" is a specific and cogent reason for discounting claimant's symptom testimony).

Regarding the pain in Gisler's back, neck, and arms, the ALJ found that he received "conservative" and "infrequent" treatments and that this treatment history controverted Gisler's claims of intensity and disability. (AR. 25.) Gisler makes two arguments on this point: (1) Gisler challenges the ALJ's characterization of his treatments—which included epidural steroid injections, medial branch nerve block injections, and radiofrequency ablation—as "conservative" given that "each of those procedures causes pain when administered, and nearly always require local, regional, or general anesthesia to do so" (Doc. 9 at 17); and (2) Gisler contends that the gaps in his treatment were due to his need to await approval from his insurance. Neither argument is persuasive. First, though Gisler advocates for a more favorable reading of the evidence, the Court "may not reweigh the

evidence or substitute its judgment for that of the ALJ." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). Gisler asserts that that such procedures cannot fairly be characterized as conservative but fails to highlight any authority—be it SSA regulations or case law—supporting this contention. Without such support, the Court is not convinced that the ALJ's finding was irrational. Second, the record does not support Gisler's assertion that any gaps in treatment were due to delays by his insurance provider. Gisler requests this Court take judicial notice that insurance providers must approve procedures before they can be scheduled, but the Court declines to do so here because it is unclear that such a fact "is not subject to reasonable dispute." See Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

In short, the Court finds that it was rational and supported by substantial evidence for the ALJ to find that Gisler had an infrequent and conservative treatment history, which is a clear and convincing reason to reject symptom testimony. Moreover, even if the ALJ erred in characterizing Gisler's treatment as conservative, this would be harmless error given that the ALJ provided other cogent clear and convincing reasons discussed above.

### D. Any error the ALJ committed in applying the *Chavez* presumption of continuing non-disability is harmless.

Gisler next argues that the ALJ in 2021 erred by failing to adopt certain findings from Gisler's 2019 ALJ decision. (Doc. 9 at 12–13.) In that 2019 decision, the ALJ determined that Gisler had a light RFC and could only "tolerate brief and superficial interaction with others such as co-workers, supervisors, and the general public." (AR. 169.) Generally, under Ninth Circuit precedent, "[a]n ALJ's findings cannot be reconsidered by a subsequent ALJ unless the claimant shows 'changed circumstances'—that is, new and material information not presented to the first judge." *Irene R. v. Saul*, No. 2:19-cv-04832-AFM, 2020 WL 4368268, at *2 (C.D. Cal. July 30, 2020); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). This is known as the "*Chavez* presumption of continuing non-

disability." *Irene R.*, 2020 WL 4368268, at *2. Relying on this presumption, Gisler contends that the ALJ erred in 2021 by making a new RFC determination that excluded the prior limitation of only "brief and superficial interaction with others." Gisler argues that this error is harmful because if that limitation had been included the ALJ's 2021 RFC determination, then two of the occupations the vocational expert testified Gisler could perform—parking lot cashier and toll collector—would have been eliminated. (Doc. 9 at 12–13.)

        The Court need not reach the issue of whether the ALJ erred in applying the *Chavez* presumption because any error committed was harmless. At step five, the ALJ found that Gisler could perform the following jobs: (1) parking lot cashier, which has approximately 8,000 existing jobs nationally; (2) toll collector, with 6,980 jobs nationally; and (3) marker, with 59,508 jobs nationally. (AR. 27.) Under SSA regulations, if a claimant can perform other work that exists in significant numbers in the national economy given their RFC, age, education, and work experience, then the ALJ must find the claimant not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c). Assuming *arguendo* Gisler's argument is correct and that limiting Gisler to brief and superficial interactions would have eliminated parking lot cashier and toll collector from the ALJ's step five findings, such error is inconsequential because a third job remains: marker. It was rational for the ALJ to find that an occupation with 59,000 jobs available nationwide to be "work that exists in significant numbers in the national economy." *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (holding that 25,000 jobs nationwide constitutes a significant number); *see also Moncado v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (finding 64,000 jobs nationwide significant). Thus, any *Chavez* error as to Gisler's ability to interact with others was harmless, and so the Court affirms on this point.

### E. The ALJ's step five determination that Gisler could perform other work that exists in significant numbers in the national economy is rational and supported by substantial evidence.

Last, Gisler contends that the ALJ failed to meet her burden at step five because two

of the three occupations fall below the "Significant Number of Jobs" ("SNOJ") standard. (Doc. 9 at 13–16.) As noted above, the ALJ found that around 8,000 parking lot cashier and 6,900 toll collector jobs existed nationally. Gisler contends these two numbers fall below the SNOJ standard, citing to Ninth Circuit cases which hold 10,000 jobs nationally or less as falling below the SNOJ threshold. (*Id.*)

The Court is not persuaded by Gisler's argument for two reasons. First, as discussed in the prior section, even if the ALJ committed error as to the parking lot and toll collector occupations, any error is harmless given that Gisler could perform a third job, marker, existing in a significant number nationwide. Second, the Court agrees with Defendant that the SNOJ standard takes into account *all occupations* the ALJ relies on and does not, contrary to Gisler's contention, examine each occupation's number in isolation. *See e.g.*, *Gutierrez*, 740 F.3d at 529 (finding 25,000 jobs across two occupations to be significant); *see also Moncado*, 60 F.3d at 524 (examining total number of jobs nationally across all occupations identified by the vocational experts). Thus, the Court would not consider whether 8,000 or 6,900 jobs alone meet the SNOJ standard, but rather whether 74,488 jobs—the sum of jobs from each of the three occupations—do. And based on precedent, that is a significant number of jobs. *See e.g.*, *Moncado*, 60 F.3d at 524. As such, the Court finds the ALJ's step five finding is rational and supported by substantial evidence. Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 18th day of January, 2024.

Douglas L. Rayes
United States District Judge